UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 NOV 30 AM 11:02
U.S. DIST...
N.D. OF...

| | | |
|---|---|---|
| MAJOR SAXTON, JR., | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-98-N-1719-S |
| CSX TRANSPORTATION, INC., et al., | ] | |
| Defendant(s). | ] | |

**ENTERED**
NOV 30 2001

**Memorandum of Opinion**

## I.  Introduction

The court has for consideration several matters left pending as a result of the Eleventh Circuit's decision in the above-styled action dated June 18, 2001. (Doc. # 86; *see also Saxton v. ACF Indus.*, 254 F.3d 959 (11th Cir. 2001)). Sitting *en banc*, the Eleventh Circuit held that in a case predicated on diversity jurisdiction, where the substantive state law supplies the applicable statute of limitations, the substantive state law also supplies the rule of decision in determining whether a cause of action relates back for purposes of Federal Rule of Civil Procedure 15(c)(1). *See Saxton*, 254 F.3d at 963. The court did not reach, however, the separate and distinct question of whether the third amended complaint filed by plaintiff in the above-styled action, naming as a defendant ACF Industries ("ACF"), related back as a matter of Alabama law.

> In this case, the parties dispute whether the Saxtons can satisfy Alabama's rules governing relation back of fictitiously named parties. The district court, however, never reached this issue because it ultimately determined that this Court's binding precedent required it to apply the relation-back principles provided by federal, rather than Alabama, law. ACF also argued, in the



> district court and before this Court on appeal, that the Saxtons did not properly substitute it as a defendant according to the dictates of Alabama Rule of Civil Procedure 9(h). The district court did not reach that issue either. We decline to address either issue, finding that both are fact-intensive and should be addressed by the district court in the first instance.

*Saxton*, 254 F.3d at 965. The parties' original submissions in support of and in opposition to summary judgment provide a sufficient basis for this court to now resolve these remaining questions. And upon due consideration, the court believes that the trip plaintiffs and ACF have been undertaking together ends now. Defendant ACF's motion for summary judgment is due to be granted.

## II.   Background

The facts and history of this case are set forth fully in the *en banc* decision of the Eleventh Circuit and in the order of this court dated February 17, 2001. *See Saxton*, 254 F.3d at 960-61; Doc. # 81. For purposes of clarity and reference, however, the court reviews some of them here. On February 17, 1997, the plaintiff, Major Saxton, Jr., suffered injuries forming the basis of this lawsuit during the course of his employment with Drummond Company (the ABC Coke division). Under Alabama law, the statute of limitations for tort claims is two years. *See* Ala. Code § 6-2-38(l)(1975). Technically then, plaintiff's claims became time-barred after February 17, 1999.

Plaintiff filed his original complaint on June 5, 1998, in the Circuit Court of Jefferson County, Alabama. He named as defendants Boliden, CSX Transportation, Inc., Union Tank Car Company, Marsh Instrument Company, and other fictitious parties who either owned, maintained, designed, manufactured, or distributed the rail car at issue in the accident. Invoking the court's diversity jurisdiction, the defendants subsequently removed the action

2

to federal court on July 2, 1998. (Doc. # 1). On October 16, 1998, the plaintiff amended his complaint by adding Mary Saxton as a party plaintiff, and General American Transportation Corporation and Trinity Chemical Industries, Inc. as parties defendant. (Doc. # 17). On November 25, 1998, the plaintiffs again amended their complaint, this time to correctly identify Trinity Chemical Industries as Trinity Industries, Inc. (Doc. # 25). This action was reassigned to the undersigned on December 29, 1998. (Doc. # 35).

On January 11, 1999, this court, pursuant to its standard Initial Order, *inter alia* dismissed the action as to all fictitious parties "without prejudice to the right of any party to take advantage of the provisions of Rule 15(c)" of the Federal Rules of Civil Procedure. (Doc. # 36). Plaintiffs thereafter moved this court to "hold open . . . the time for serving defendants" on February 17, 1999, arguing that the requested extension would prevent Federal Rule of Civil Procedure 4(m) from "foreclos[ing] the operation of Alabama's fictitious party practice in this case." (Doc. # 39). The court granted the motion on March 1, 1999. (Doc. # 40). Finally, on March 26, 1999, the plaintiffs filed their third amended complaint, naming ACF as a party defendant. (Doc. # 43).[1]

The importance to the plaintiffs of naming ACF as a defendant in the lawsuit stems from the fact that ACF owned and manufactured the railcar involved in Major Saxton's accident. (*See* Doc. # 70, Ex. 8, Aff. of Homer Taber, pp. 2-3; *see also* Doc. # 43). The plaintiffs did not learn of this fact, however, until after the statute of limitations applicable

---

[1] This court has at different times during the course of these proceedings dismissed several of the named defendants. No longer parties to this case are Union Tank Car Company, General American Transportation Corporation, and Trinity Industries. (Doc. # 13, 58, 59). Additionally, party defendant GE Capital Railcar Services, who was added to the lawsuit through plaintiff's fourth amended complaint, has also been dismissed. (Doc. # 48, 62).

3

to plaintiffs' claims expired. Plaintiffs are therefore time-barred from proceeding against ACF unless the third amended complaint naming ACF satisfies the rules governing relation back of fictitiously named parties under Alabama law.

## III. Discussion

Two Alabama procedural rules define this court's analysis. The first is Rule 9(h) of the Alabama Rules of Civil Procedure, which provides:

> (h) Fictitious parties.
> When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.

Ala. R. Civ. P. 9(h). The second is Rule 15(c), which provides in relevant part:

> (c) Relation back of amendments.
> An amendment of a pleading relates back to the date of the original pleading when . . .
> (4) relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).

Ala. R. Civ. P. 15(c)(4). As the Supreme Court of Alabama has made clear, these rules

> allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted. Such a substitution is allowed to relate back to the date of the original complaint if the original complaint adequately described the fictitiously named defendant and stated a claim against such a defendant.

*Jones v. Resorcon, Inc.*, 604 So. 2d 370, 372 (Ala. 1992). Satisfaction of these rules is not automatic, however, for a plaintiff must demonstrate "that he was ignorant of the true identity of the defendant and that he used due diligence in attempting to discover it." *Id.* at 372-73.

The defendant offers two grounds in opposition to the plaintiffs' effort to relate their third amended complaint back to their original complaint. The first argument essentially

claims procedural defect in the means by which the plaintiffs brought ACF into the lawsuit. Rule 9(h) requires a party to "substitute" the true party for the previously denoted fictitious party. *See* Ala. R. Civ. P. 9(h). The defendant argues that the plaintiffs did not substitute it for a previously identified fictitious party, but rather "added" it to the lawsuit as a new party. This error, according to defendant, precludes application of relation-back principles. (Doc. # 68, pp. 6-8).

The second argument attacks the diligence of plaintiff in identifying ACF as a party defendant to the lawsuit. Defendant claims that numerous means were available to plaintiff through which the true identity of the manufacturer of the rail car could have been discerned. Moreover, defendant argues that the time available to plaintiffs – stretching from Major Saxton's injury, retention of counsel, initial complaint, to the eventual statutory deadline – and their failure to identify ACF until after the passing of the deadline strongly supports the conclusion that plaintiffs slept on their claims and failed to diligently pursue them. (*Id.*, pp. 8-21). The court will address each of these arguments in turn.

**A.    Addition v. Substitution**

As they pertain to this argument, the facts are clear and relatively undisputed. Plaintiffs added ACF in their third amended complaint as opposed to substituting them for a previously named fictitious party. (Doc. # 43). Rule 9(h) clearly provides for amendment of pleadings by way of substitution, as opposed to addition. *See* Ala. R. Civ. P. 9(h). The question then is simply whether defendant is correct in its belief that the rules demand a formalistic application and therefore preclude the court from legitimating plaintiffs' efforts.

5

As support for this proposition, the defendant cites a recent Alabama Court of Civil Appeals decision. *See Davison v. Pogue*, 735 So. 2d 1240 (Ala. Civ. App. 1999). In *Davison*, the plaintiff had been involved in a multi-car automobile accident. She sued *inter alia* an individual defendant Carney, as well as several fictitious parties A-F. When it became evident that the defendant Carney had nothing to do with plaintiff's injuries, the court dismissed him. Plaintiff subsequently filed an amended pleading – beyond the applicable statute of limitations period – substituting for Carney the defendant Davison. *See Davison*, 735 So. 2d at 1240-41.

Davison moved for a judgment as a matter of law, arguing that the plaintiff's amended pleadings did not relate back as a matter of Alabama law. The trial court denied her motion, but the court of appeals ultimately determined that the plaintiff's amended complaint did not relate back. According to the court, the plaintiff had substituted Davison not for a fictitious party, but for an actually named party. In so doing, plaintiff "changed" – as opposed to "substituted" – parties. The relation back rules for fictitious parties – rules 15(c)(4) and 9(h) – did not apply. *See Davison*, 735 So. 2d at 1243-44.

Defendant claims that this case represents a policy of strict pleading in the Alabama courts, and urges this court to deny plaintiffs' amendment on this ground alone. Plaintiffs claim in opposition that the level of formalism urged by the defendant contravenes established case law, and avers *Davison* as inapposite to the instant facts.

The court is inclined to agree with the plaintiffs. The language of Rule 9(h) notwithstanding, the Alabama Supreme Court has made it clear that the "adoption of the Alabama Rules of Civil Procedure liberalized the previous rules of pleading, doing away

6

with many of the strict requirements of the former rules. . . . [P]leadings are [now] to be construed liberally, with every reasonable intendment and presumption . . . made in favor of the pleader." *Ex parte GMC*, 769 So. 2d 903, 911 (Ala. 1999) (citations and quotations omitted). And although a balance must be struck between liberal rules of pleading and the expression of the state legislature as to the period of time during which particular claims shall be actionable, the "purpose of such rules as Rule 15 is to allow the maximum opportunity for the parties to state each claim and have those claims decided on the merits while insuring the parties have adequate notice of the issues to be tried." *B & M Homes v. Hogan*, 376 So. 2d 667, 674 (Ala. 1979). "[T]o treat pleading as a game of skill in which one misstep by counsel may be decisive to the outcome [is] an approach . . . consistently rejected [by the courts.]" *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 334-35 (1971); *see also Birmingham v. Fairfield*, 396 So. 2d 692, 696 (Ala. 1981) ("We have said that since the Alabama Rules of Civil Procedure are modeled on the Federal Rules of Civil Procedure, federal decisions are highly persuasive when we are called upon to construe the Alabama Rules.").

This case does not present a situation akin to that of *Davison*. Rather, this case involves a technical error on the part of plaintiffs' counsel apparently made at the commencement of proceedings and replicated throughout. The original complaint filed June 5, 1998 contains the following description:

> There may be other entities whose true names and identities are unknown to the plaintiff at this time who may be legally responsible for the claim(s) set forth herein and who may be *added* by amendment by the plaintiff when their names and identities are accurately ascertained by further discovery. Until

7

that time, *the plaintiff will designate these parties in accordance with ARCP 9(h)*.

(Pl. Compl. (emphasis added)). It seems quite evident then that plaintiffs' counsel has, from the outset of this lawsuit, been laboring under the misapprehension that adding parties by amendment is the same thing as substituting parties for fictitiously named parties per Rule 9(h). Illustrative of this point is plaintiffs' third amended complaint. The relevant language avers ACF as a "manufacturer and seller of railroad cars" who "sold the subject railroad car." (Doc. # 43). This description is the same description given to fictitious defendants K, L & M. (Pl. Compl.).

Thus, notwithstanding the defendant's mistaken belief that "the Alabama Supreme Court has emphatically insisted upon strict compliance with the procedures [of rules 9(h) and 15(c)]," the court finds that plaintiffs' addition of defendant ACF satisfies the linguistic requirements of Alabama Rule of Civil Procedure 9(h). (*See* Doc. # 78, p. 2; *see also Toomey v. Foxboro Co.*, 528 So. 2d 302, 308-09 (Ala. 1988) (Adams, J., dissenting)).

### B.   Due Diligence

Different considerations are presented by the question of whether the plaintiffs exercised due diligence in naming ACF as a party defendant to this lawsuit. The plaintiffs suggest that this court can take judicial notice of its efforts and without more reject the defendant's assertions. Fortunately, their arguments do not rely entirely on a doctrine inapplicable to the present facts.[2] Instead, plaintiffs argue that the counsel for Major

---

[2] Judicial notice of a fact is properly taken when the fact is not reasonably disputed. *See Cabberiza v. Moore*, 217 F.3d 1329, 1335 (11th Cir. 2000). The issue of diligence, however, is quite hotly disputed. *See Saxton*, 254 F.3d at 965-66 ("In this case, the parties dispute whether the Saxtons can satisfy Alabama's rules governing relation back of fictitiously named parties.").

8

Saxton's employer, Drummond, failed to disclose certain documents that would have revealed ACF as a proper party defendant until March of 1999; failed to create a privilege log pursuant to Federal Rule of Civil Procedure 45(d)(2); and, in an affirmative misstep, disclosed inaccurate information identifying a railcar having nothing to do with Major Saxton's accident. (See Doc. # 70, Ex. 9, Dep. of Constance Cox, pp. 36-37, 39-44, 136-38, 143-44; Doc. # 70, Ex. 11, Dep. of John Fred McDuff, pp. 45-48; see also Doc. # 75, Ex. 9). These instances, according to the plaintiff, as well as it's self-described use of "all possible diligence," justify the dilatory naming of ACF as a party defendant.

Defendant presents a wealth of evidence in opposition to plaintiffs' purported exercise of due diligence. The defendant first observes that information which would have steered the plaintiffs to name ACF as a defendant was available from "five separate documents, and four separate individuals." (Doc. # 10, p. 10). Each of these individuals and documents to an extent referenced the proper identity of the rail car involved in Major Saxton's accident. The argument essentially is that since the information existed – and in so many forms – the plaintiffs *a fortiori* could not have been diligent, as shown by their failure to discover it.

The defendant also assails the plaintiffs' delay in deposing certain individuals employed by Drummond. According to the defendant, three of the individuals identified in the defendant's initial disclosures of August 24, 1998, possessed information that would have suggested ACF as the proper party defendant. None of these defendants, however, was deposed before the expiration of the statute of limitations. (*Id.*, pp. 10-14; see also Doc. # 70, Ex. 22, DEF00152-53). Furthermore, plaintiffs' counsel apparently suspected as early

9

as August 28, 1998, that the railcar identified by Drummond counsel during the period covered by the statute of limitations as the car involved in the accident was not in fact the correct railcar. (*See* Doc. # 75, Ex. 8, Memo to File). Against this backdrop, the defendant submits that plaintiffs cannot now claim innocence (and diligence) as a result of their being supplied misinformation.

The defendant's "what-might-have-been" argument has some appeal but that, without more, does not carry the day. Hindsight is always twenty-twenty, and to measure a party's diligence in such a way would infuse Alabama's fictitious party practice with a requirement of prescience that is at best only fifty-fifty.[3] It may be true that sources existed through which the plaintiffs could have learned the identity of the railcar. It is equally true, apparently, that Drummond withheld documents during the summer of 1998 – documents ultimately disclosed in the spring of 1999 – that indicated the correct identity of the railcar and its manufacturer and owner, that was involved in Major Saxton's accident. (*See* Doc. # 75, Ex. 9; *Id.*, Ex. 20, Dep. of Constance Cox, pp. 43-47). Had these documents been disclosed in 1998, it stands to reason that plaintiffs would have named ACF within the applicable statutory period.

Other factors, however, cast a rather dark shadow over the plaintiffs' allegedly diligent pursuit of ACF. First, the plaintiffs had by August of 1998 identified several individuals for deposition who, had they been deposed before the expiration of the statute of limitations, likely would have steered or directed plaintiffs to name ACF as a party

---

[3] A well-known former college football coach is claimed once to have said that "hindsight is fifty-fifty." The court is uncertain what that means but surely there must be some mysterious and deep message signifying something profound there. Unfortunately, the court lacks the time, inclination, and reach to discern it.

defendant. The record further demonstrates a substantial gap in time between the identification of these individuals in August of 1998; tentative deposition scheduling in October of 1998; and ultimate deposition at a time well after the expiration of the statute of limitations. (*See* Doc. # 70, Ex. 3; *Id.*, Ex. 14; *Id.*, Ex. 22, DEF00152-53). In fact, a letter dated September 3, 1998, from W. Scott McGarrah – counsel for defendant Marsh Instrument – to Drummond counsel Constance Cox, expressed an interest on the part of McGarrah to commence depositions in October of 1998, with employee Jim Howard first on the list. Howard was not deposed, however, until more than one year later. (Doc. # 70, Ex. 10, p. 1). As ACF notes repeatedly, Howard was one of the "four separate individuals" with knowledge of the railcar's true owner and manufacturer. (*See* Doc. # 68, pp. 10-11, 13). While the record is not clear why Howard was first on attorney McGarrah's list, the record offers no explanation whatsoever for the delay in conducting depositions.

A second disconcerting fact – one that compounds the gravity of the delay in conducting depositions – is that plaintiffs' counsel evidently suspected the accuracy of the information being provided them by Drummond counsel. A memorandum to file, dated August 20, 1998, and authored by a paralegal with plaintiffs' counsel, expresses "concerns about the correctness of [the identity of the railcar] because the dates do not match up." (Doc. # 75, Ex. 8; *see also* Doc. # 73, p. 8). The record suggests some evidence of investigative follow-up by plaintiffs' counsel in October of 1998, but the author of the memorandum still possessed concerns as to the exact identity of the railcar as late as March of 1999. (*See* Doc. # 70, Ex. 12, Dep. of Steven McMeekin, pp. 43-45, 83-84; *see also id.*, Ex. 9, Dep. of Constance Cox, pp. 77, 195-201).

11

Furthermore, the record as a whole simply does not bear out plaintiffs' assertions that they exercised "all possible diligence." (Doc. # 73, p. 8). In fact, most troubling is the pattern of reliance plaintiffs' counsel vested in the efforts of others. This reliance seems to have occurred to the virtual exclusion of any independent efforts on the part of plaintiffs, and naturally begs the question of whether plaintiffs' "efforts" in this action might ever qualify as diligence. One example of this reliance can be seen in the method employed by plaintiffs' counsel to obtain document disclosure from Drummond. In July of 1998, attorney McGarrah served a subpoena on Drummond requesting various forms of information relating to the lawsuit. (Doc. # 70, Ex. 6, DEF00126-28). Twenty days after the subpoena was served, plaintiffs' counsel requested copies of this information pursuant to the Federal Rules of Civil Procedure. (Doc. # 70, Ex. 8). Drummond honored this request and disclosed the information. (Doc. # 75, Ex. 23, Dep. of Steven McMeekin, pp. 136-37). And as discussed *supra*, certain documents identifying the correct railcar were initially withheld from all parties; at least one on the basis of the work product privilege.

Plaintiffs are heard to argue that the failure by Drummond counsel to disclose the aforementioned documents and to file a privilege log is partly to blame for their failure to name ACF before the expiration of the statute of limitations. The record demonstrates, however, that attorney McGarrah, followed up his subpoena in August or September of 1998 with a telephone call to Drummond. During that call, he learned that certain information relating to an investigation of Major Saxton's accident had been collected by Drummond personnel and was being withheld on the basis of work product privilege. (Doc. # 70, Ex. 9, Dep. of Constance Cox, pp. 103-04, 115-16, 138-39). The plaintiffs offer no explanation as

to why they did not endeavor to obtain like information, or, if they in fact possessed this information, sought relief or other assistance from the court to obtain the privileged information.

Equally perplexing are the deposition efforts conducted in this case. Plaintiffs claim they "began efforts to take the depositions of those Drummond employees . . . who had information regarding the facts and circumstances of the incident involving Major Saxton." (Doc. # 72, p. 9; see also Doc. # 75, Ex. 23, Dep. of Steven McMeekin, p. 42). Other evidence in the record, however, supports the conclusion that attorney McGarrah – and not plaintiffs' counsel – was at least initially responsible in orchestrating the depositions with Drummond counsel. (Doc. # 70, Ex. 14, DEF00097). Given plaintiffs' counsel's questions as to the correct identity of the railcar involved in Major Saxton's accident, the court is curious as to why no one attempted to expedite the scheduling of depositions in this case. By the same token, the court cannot help but take note of the timing of counsel's visit to the scene of Major Saxton's accident, on January 20, 1999 – less than one month before the expiration of the statute of limitations. (Doc. # 70, Ex. 9, Dep. of Constance Cox, pp. 57-58; Id., Ex. 12, Dep. of Steven McMeekin, p. 44-45).

In this regard, the court also questions the scope of plaintiffs' investigative efforts. As previously mentioned, a paralegal for plaintiffs' counsel authored a memorandum to the file in which she questioned the accuracy of the information received from Drummond counsel. That same memorandum goes on to note that the author intended to call "and give[] the car number information to [CSX defense counsel] Turner Williams who will check with CSX to see if their records match up for this car number." (Doc. # 75, Ex. 8). Absent

13

in this memorandum is any indication of what the plaintiffs themselves did to identify the railcar. If this fact was not representative of the entire body of evidence, the court would make little of it. (Doc. # 70, Ex. 9, Dep. of Constance Cox, pp. 159-60). But the plaintiffs themselves make plain that their efforts to identify the correct railcar turned on information supplied to them by others. (Doc. # 72, p. 8; *see also* Doc. # 70, Ex. 9, Dep. of Constance Cox, p. 48).

As discussed *supra*, diligence is required of those parties who wish to substitute a named defendant for a fictitious one after the expiration of the statute of limitations. *See Jones v. Resorcon, Inc.*, 604 So. 2d 370, 372-73 (Ala. 1992); *see also* Ala. R. Civ. P. 9(h), 15(c)(4). To determine whether a party has been diligent, a court must ask "whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously." *Resorcon*, 604 So. 2d at 373 (quoting *Davis v. Mims*, 510 So. 2d 227, 229 (Ala. 1987) (quotations omitted)). While this test may seem straightforward, the degree of diligence required by it is not at all insubstantial. As exemplified by one recent case, the diligence standard charges a party plaintiff with the affirmative obligations to investigate and realize the significance of any information potentially relevant to his claims. *See e.g, Ex parte Snow*, 764 So. 2d 531, 537 (Ala. 1999); *Harmon v. Blackwood*, 623 So. 2d 726, 727 (Ala. 1993).

Defendant argues that diligence under Alabama law means "use [of] all available means of obtaining the identity of a defendant," and cites *Resorcon* as indicative of this point. (Doc. # 68, p. 18). The court disagrees. None of the cases, including *Resorcon*,

require such a high and rigid standard. What the cases do require, however, is a level of diligence not met by the plaintiffs here.

In *Resorcon*, the plaintiff suffered on-the-job injuries when he fell through a plastic grate on a blower fan. *See id.* at 371. After the expiration of the statute of limitations, plaintiff attempted to substitute as a defendant the manufacturer of the blower fan. In support of his motion, plaintiff's counsel explained that he had been denied access to the accident site and had been forced to rely on information supplied to him – information later found to be inaccurate. *See id.* at 372. In affirming the trial court's finding that plaintiff had failed to exercise due diligence, the Alabama Supreme Court first observed that the record demonstrated knowledge on the part of plaintiff that the manufacturer of the fan had not been properly identified. *See id.* at 373. The court then explained that plaintiff's failure to obtain a court-ordered inspection of the fan – if in fact he had been denied access – precluded a finding of diligence. *See id.*

A like result can be found in the wrongful death case of *Ex parte Klemawesch*. As was the case in *Resorcon* and here, the plaintiff sought to substitute the name of a defendant pursuant to Alabama's fictitious party practice after the expiration of the statute of limitations. The defendant, the attending physician alleged to have caused the wrongful death, moved to quash service and dismiss the claim, but the trial court denied his motion. Subsequently, the defendant petitioned the Alabama Supreme Court for a writ of mandamus compelling the trial court to set aside its order and grant the motion. *See Ex parte Klemawesch*, 549 So. 2d 62, 63 (Ala. 1989). The court granted the writ, and held that plaintiff had failed to proceed diligently in identifying the defendant. According to the court, the

15

lack of diligence stemmed both from plaintiff's failure to conduct discovery and from the notice plaintiff held as to the existence of an unidentified attending physician likely a proper party to the action. *See id.* at 64-65.

A third example is *Crawford v. Sundback*. The facts of this action involved a chemical plant explosion that killed several employees. The widows of those killed brought numerous actions against both named and fictitious defendants. Following the expiration of the statute of limitations, the plaintiffs sought to substitute several co-employees for some of the fictitiously named defendants. These defendants filed motions for summary judgment, and the trial court granted them. *See Crawford v. Sundback*, 678 So. 2d 1057, 1058-59 (Ala. 1995). In affirming the judgments, the Alabama Supreme Court explained that the defendants had presented substantial evidence attacking plaintiffs' diligence in naming the defendant employees. For example, "simple discovery, such as interrogatories to the co-employee defendants who were named in the original complaints, would have disclosed their identities." *Id.* at 1060.

These cases and the evidence submitted by the parties compel the conclusion that plaintiffs did not act with appropriate diligence in naming ACF as a defendant in this action. Plaintiffs clearly held questions as to the identity of the railcar owner/manufacturer throughout the relevant statutory period. Plaintiffs' efforts to resolve these questions, however, were at best casual attempts at investigation. No depositions were taken until after the expiration of the statutory period. No physical examination of the accident scene occurred until January of 1999, approximately one month before the expiration of the statutory period. Document production occurred through another's power of subpoena, and

the record indicates no effort by the plaintiffs to follow-up this production or supplement it in any way. The record does at times suggest some investigative endeavors on the part of plaintiffs' counsel. Each of these endeavors, however, appear bootstrapped upon the actions of others, and consequently subject to the delays and whims of individuals beyond plaintiffs' control. And as far as the absence of a privilege log is concerned, the evidence clearly indicates that attorney McGarrah knew that Drummond counsel was withholding allegedly privileged information. Given that the plaintiffs relied on attorney McGarrah to accomplish document production and deposition scheduling, the court sees no reason to excuse plaintiffs' failure to learn of this fact as well.

Several of the Alabama cases applying the diligence standard have been reluctant to render an opinion as to the presence of diligence and have instead left the issue to the trier of fact. *See, e.g., Ex parte Stover*, 663 So. 2d 948, 952 (Ala. 1995); *Ex parte FMC Corp.*, 559 So. 2d 592, 595 (Ala. 1992). And while an equal number of cases exist where the courts have reached the issue, this court believes that, at least in this case, the evidence has established plaintiffs' lack of diligence as a matter of law. Summary judgment as to plaintiffs' remaining tort claims against ACF is due to be granted.

**IV.    Conclusion.**

The court will enter an appropriate order in conformity with this memorandum of opinion.

17

Done, this \_\_30th\_\_ of November, 2001.

<br>
Edwin Nelson<br>
United States District Judge

18